No. 25-10600

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Outsourcing Facilities Association; North American Custom Laboratories, L.L.C. Partners, doing business as Farmakeio Custom Compounding,

*Plaintiffs-Appellants*,

v.

Food & Drug Administration; Dr. Marty Makary, Commissioner, U.S. Food and Drug Administration,

*Defendants-Appellees*, and

Eli Lilly and Company,

*Intervenor-Appellee.*

On Appeal from the United States District Court
For the Northern District of Texas, No. 4:25-cv-00953-P
The Honorable Mark T. Pittman

## Reply Brief of Appellants

<table>
<tr>
<td>

TY DOYLE
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
(713) 646-1374
tgdoyle@bakerlaw.com

</td>
<td>

ANDREW M. GROSSMAN
RICHARD B. RAILE
KRISTIN A. SHAPIRO
MARC N. WAGNER
BENJAMIN D. JANACEK
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for Plaintiffs-Appellants*

</td>
</tr>
</table>

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judge of this court may evaluate possible disqualification or recusal.

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that there are no corporations that are parents of any Petitioner or that own stock in the Petitioners.

**A.** **Plaintiffs-Appellants**

Outsourcing Facilities Association

North American Custom Laboratories LLC Partners d/b/a Farmakeio Custom Compounding

**B.** **Attorneys for Plaintiffs-Appellants**

Tyler Geoffrey Doyle
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, TX 77002

Andrew Michael Grossman
Richard Bryan Raile
Kristin Shapiro
Marc N. Wagner
Benjamin D. Janacek
Baker & Hostetler LLP
1050 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036

Jeremy B. Kustoff
Baker & Hostetler LLP
2850 North Harwood, Suite 1100
Dallas, TX 75201

Brian Burgess
Goodwin Procter LLP
1900 N Street N.W.
Washington, D.C. 20036

## C.    Defendants-Appellees

United States Food and Drug Administration

Dr. Marty Makary

## D.    Attorneys for Defendants-Appellees

Daniel Tenny
Caroline W. Tan
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Oliver McDonald
David Hixon
Kimberly Ruthsatz Stephens
DOJ Civil Division
450 5th Street, N.W., Suite 6400
Washington, D.C. 20001

## E.    Intervenor-Appellee

Eli Lilly and Company

## F.    Attorneys for Intervenor Eli Lilly and Company

Dee J. Kelly, Jr.
Kelly Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, TX 76102

Diana M. Watral
James F. Hurst
Ryan J. Moorman
Kirkland & Ellis LLP
333 West Wolf Point Plaza

Chicago, IL 60654

James R. P. Hileman
Kirkland & Ellis LLP
300 N LaSalle Street
Chicago, IL 60654

Jay P. Lefkowitz
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Paul D. Clement
Erin E. Murphy
Matthew D. Rowen
Kyle R. Eiswald
Clement & Murphy PLLC
706 Duke Street
Alexandria, VA 22314

## G.    Movant Strive Specialties Inc.

Strive Specialties Inc.

## H.    Attorneys for Strive Specialties Inc.

Mark Boesen
Boesen and Snow LLC
8501 E. Princess Dr., Suite 220
Scottsdale, AZ 85255

Derek S. Davis
Cooper & Scully PC
900 Jackson, Suite 100
Dallas, TX 75202

## I.    Amicus

Ivim Health

Novo Nordisk Inc.

## J.  Attorneys for Amicus Ivim Health

Michael E. Hassett
Harrison Steck, P.C.
515 Houston St., Suite 701
Fort Worth, TX 76102

Brian Burgess
Goodwin Procter LLP
1900 N Street, N.W.
Washington, D.C. 20036

## K.  Attorneys for Amicus Novo Nordisk Inc.

Benjamin C. Block
Daniel G. Randolph
Thomas Ross Brugato
Covington & Burling LLP
One CityCenter
850 10th St. N.W.
Washington, D.C. 20001

Trevor William Carolan
Bowman and Brooke LLP
5850 Granite Parkway, Suite 900
Plano, TX 75024

## L.  Interested Third Parties

Southwest Home Solutions LLC

FarmaKeio AR LLC

FarmaKeio Outsourcing LLC

Evexias Holding Co LLC

Sutherland Solutions LLC

JL Graves Holdings LLC

JWRD Holdings LLC

Harris Portal Solutions LLC

Nilus LLC

Daniel DeNeui

Michael Cole

Justin Graves

Cody Boatman

Robert Harris

Paul Jowell

/s/ Andrew M. Grossman
Andrew M. Grossman
*Attorney of record for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Certificate of Interested Persons.......................................................... i

Table of Contents.......................................................................... vi

Table of Authorities ..................................................................... vii

Introduction .................................................................................. 1

Argument ...................................................................................... 2

I.    The Delisting Action Was Unlawfully Promulgated Without
      Notice-and-Comment Rulemaking .............................................. 2

      A. The Delisting Action Is Not an Adjudication................................ 2

      B.  The Delisting Action Must Be Set Aside..................................... 10

II.   The Delisting Action Is Arbitrary and Without a Reasoned Basis........ 13

      A. ████████████████████████████████.................. 13

      B. ████████████████████████████████............... 21

      C. ████████████████████████████████............. 23

      D. ████████████████████████████████............... 25

Conclusion ................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
    522 U.S. 359 (1998) ................................................................. 13

*Am. Pub. Gas Ass'n v. DOE*,
    22 F.4th 1018 (D.C. Cir. 2022) ............................................... 15

*Amin v. Mayorkas*,
    24 F.4th 383 (5th Cir. 2022) ................................................... 23

*Anne Arundel Cnty. v. EPA*,
    963 F.2d 412 (D.C. Cir. 1992) .................................................. 6

*Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    745 F.2d 677 (D.C. Cir. 1984) ............................................. 8, 9

*Ass'n of Priv. Colleges & Univs. v. Duncan*,
    870 F. Supp. 2d 133 (D.D.C. 2012) ...................................... 20

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) ........................................................ 3, 4, 7

*Cath. Health Initiatives Iowa Corp. v. Sebelius*,
    718 F.3d 914 (D.C. Cir. 2013) ............................................. 3, 4

*Chem. Mfrs. Ass'n v. EPA*,
    28 F.3d 1259 (D.C. Cir. 1994) .............................................. 18

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ................................................................ 4

*City of Arlington, Tex. v. FCC*,
    668 F.3d 229 (5th Cir. 2012) ......................................... 4, 5, 12

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) .............................................................. 14

*Green Rock LLC v. IRS*,
    104 F.4th 220 (11th Cir. 2024) .............................................. 10

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ................................................... 10

*Lake Carriers' Ass'n v. EPA*,
652 F.3d 1 (D.C. Cir. 2011)...................................................... 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ................................................................. 12

*Louisiana v. DOE*,
90 F.4th 461 (5th Cir. 2024) ................................................... 11

*Mann Constr., Inc. v. United States*,
27 F.4th 1138 (6th Cir. 2022) ......................................... 6, 9, 10

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ................................................................... 6

*Mississippi v. EPA*,
744 F.3d 1334 (D.C. Cir. 2013) ............................... 14, 17, 20, 25

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Ins. Co.*,
463 U.S. 29 (1983)...................................................... 14, 16, 18

*Neustar, Inc. v. FCC*,
857 F.3d 886 (D.C. Cir. 2017) ............................................4-6, 8

*NLRB v. Bell Aerospace Co. Div. of Textron*,
416 U.S. 267 (1974) ................................................................... 8

*NLRB v. Wyman-Gordon Co.*,
394 U.S. 759 (1969) ...........................................................3, 5, 6

*Off. of Commc'n of United Church of Christ v. FCC*,
707 F.2d 1413 (D.C. Cir. 1983) .............................................. 13

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
494 F.3d 188 (D.C. Cir. 2007)................................................. 15

*Perez v. Mortgage Bankers Ass'n*,
575 U.S. 92 (2015).................................................................. 11

*Process Gas Consumers Grp. v. FERC*,
    177 F.3d 995 (D.C. Cir. 1999) ................................................................ 19

*Qwest Servs. Corp. v. FCC*,
    509 F.3d 531 (D.C. Cir. 2007) .................................................................. 8

*Safari Club Int'l v. Zinke*,
    878 F.3d 316 (D.C. Cir. 2017) .........................................................2-8, 12

*Shell Offshore Inc. v. Babbitt*,
    238 F.3d 622 (5th Cir. 2001) .................................................................... 8

*SolarWorld Ams., Inc. v. United States*,
    962 F.3d 1351 (Fed. Cir. 2020) .............................................................. 15

*Susquehanna Int'l Grp., LLP v. SEC*,
    866 F.3d 442 (D.C. Cir. 2017) ................................................................ 24

*Texas v. EPA*,
    137 F.4th 353 (5th Cir. 2025) ...................................................... 13, 14, 16

*United States v. Fla. E. Coast Ry. Co.*,
    410 U.S. 224 (1973) .................................................................................. 3

*United States v. Johnson*,
    632 F.3d 912 (5th Cir. 2011) .................................................................. 12

*U.S. Air Tour Ass'n v. FAA*,
    298 F.3d 997 (D.C. Cir. 2002) ................................................................ 14

*U.S. Steel Corp. v. EPA*,
    595 F.2d 207 (5th Cir. 1979) .................................................................. 12

*Wages & White Lion Invs., L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ................................................................ 13

*W&T Offshore, Inc. v. Bernhardt*,
    946 F.3d 227 (5th Cir. 2019) .................................................................... 8

## Statutory and Regulatory Authorities

5 U.S.C. § 551 ......................................................................................... 4, 8

5 U.S.C. § 559.................................................................... 8

13 U.S.C. § 141................................................................. 14

21 U.S.C. § 331.................................................................. 4

21 U.S.C. § 332.................................................................. 4

21 U.S.C. § 333.................................................................. 4

21 U.S.C. § 334.................................................................. 4

21 U.S.C. § 356c.............................................................9, 23

21 U.S.C. § 356e................................................................ 9

42 U.S.C. § 7412................................................................ 6

**Other Authorities**

FDA, Adverse Events Reporting Systems Public Dashboard.......................... 2

THE MATRIX, Netflix (Warner Bros. Pictures 1999) ...................................... 23

# INTRODUCTION

Rather than rebut Plaintiffs' challenges to FDA's Delisting Action and Decision, FDA and Lilly (collectively, Defendants) cast indiscriminate accusations and half-baked assertions in an attempt to obfuscate the issues.[1] What they fail to do, however, is justify FDA's unlawful action.

On the rulemaking issue, Plaintiffs demonstrated that an agency promulgates a rule when it issues a binding statement with prospective, general applicability to the public. Because the Delisting Action erects blanket restrictions on the public going forward, and does not retroactively determine any party's rights or liabilities, it is a rule. Defendants do not show otherwise. Ultimately, they claim a limitless right of agencies to sidestep notice-and-comment by labels, which precedent expressly rejects.

On the substance of the Decision, Defendants rely on the ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ This is a classic garbage-in-garbage-out scenario. This Court and others have reiterated agencies' duty to explain not only the numbers they rely on, but also the underlying models. Moreover, Defendants hope that their ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[1] This reply brief carries forward terms as defined in Plaintiffs' opening brief. It cites Lilly's response brief as "LillyBr." and FDA's as "FDABr."

███ Defendants do not dispute this math or, in fact, *any* of Plaintiffs' calculations. This fact alone exposes as baseless Lilly's accusations of "misunderstandings," "ignorance," and "lack of attention." LillyBr.25. Those are features of the Decision itself, and such arbitrary action cannot stand.[2]

## ARGUMENT

### I.    The Delisting Action Was Unlawfully Promulgated Without Notice-and-Comment Rulemaking

The Delisting Action, which sets a prospective ban on activity across an entire industry, is a legislative rule unlawfully imposed without notice-and-comment. OpeningBr.13-31. Defendants attempt to justify it as the product of adjudication. FDABr.21-32; LillyBr.26-34. It is not. The Delisting Action did not retrospectively adjudicate the rights of any parties. And because this plain violation of the APA is not harmless, the Delisting Action should be set aside.

### A.    The Delisting Action Is Not an Adjudication

"[A]djudications immediately bind parties by retroactively applying law to their past actions." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 333 (D.C. Cir. 2017). Accordingly, in Defendants' principal authority, LillyBr.23,

---

[2] Lilly also attempts to sow prejudice by claiming compounded GLP-1 drugs "pose serious risk to patients." LillyBr.8. The data refute this point. FDA's adverse-incident reporting system identifies over 90,000 adverse events involving *Lilly's products* (Mounjaro and Zepbound) in 2024 and 2025, including nearly 200 deaths. *See* FDA, Adverse Events Reporting Systems (FAERS) Public Dashboard, https://www.fda.gov/drugs/fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited Dec. 5, 2025). Lilly, meanwhile, has been able to identify only 215 reports of adverse events with compounded tirzepatide, notwithstanding widespread compounding. Dist.Ct.Dkt.No. 59 at 4.

26; FDABr.22, the Supreme Court *rejected* an agency's effort to call its action an adjudication because it was "applicable across the board" and "for prospective application only." *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 246 (1973). The Delisting Action is no different.

       1.     Begin with the "black-letter administrative law" doctrine that "an adjudication *must* have retroactive effect, or else it would be considered a rulemaking." *Cath. Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 922 (D.C. Cir. 2013); *see also Safari Club*, 878 F.3d at 333 (same). That principle was settled decades ago when the Supreme Court held that an agency's statement in adjudication, which was only to be applied prospectively, did not need to "be obeyed by the affected public" because it was not a rule. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 (1969) (plurality opinion); *see also id.* at 777 (Douglas, J., dissenting) (agreeing with holding); *id.* at 780 (Harlan, J., dissenting) (same). This feature of adjudication—that it "could *not* be purely prospective, since otherwise it would constitute rulemaking"—marks the "dichotomy" "upon which 'the entire APA is based.'" *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 221 (1988) (Scalia, J., concurring) (cleaned up).

       Defendants *agree* that the Delisting Action is purely prospective. It "meant that outsourcing facilities nationwide could no longer compound tirzepatide," LillyBr.27, by the "reinstatement of ordinary statutory restrictions on compounding copies of [tirzepatide] drugs," FDABr.1. Moreover, Defendants do not deny that the Delisting Action condemns no one's "past actions." *Safari*

*Club*, 878 F.3d at 333. This is the "inherently prospective" stuff of "rulemaking." *Neustar, Inc. v. FCC*, 857 F.3d 886, 895 (D.C. Cir. 2017).

Instead, Defendants try to wish away the APA's central "dichotomy." *Bowen*, 488 U.S. at 221 (Scalia, J., concurring). FDA contends that the feature of retroactivity matters only in "an enforcement action in an Article III court." FDABr.28. To the contrary, it is central to "*administrative* law." *Cath. Health*, 718 F.3d at 921 (emphasis added). For its part, Lilly tries to rewrite the retroactivity requirement as one of "immediate and determinable impact." LillyBr.27 (citation omitted). But the Delisting Action's only immediate impact is that it has the "force and effect of law," which makes it a legislative rule. *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) (footnote omitted); *see* OpeningBr.15. The "immediate legal consequence[]" that Lilly describes, LillyBr.17 (citation omitted), is the general public's forward-looking duty to comply with compounding restrictions. But the APA defines a statement with "future effect" as a rule. 5 U.S.C. § 551(4).

By contrast, adjudication acts "immediately" to "bind parties" in the sense that it works "retroactively." *Safari Club*, 878 F.3d at 333. The Delisting Action does not do that. No compounder's past conduct was adjudicated. Like a rule, the Delisting Action "is prospective" and "has a definitive effect on individuals only after the rule subsequently is applied." *City of Arlington, Tex. v. FCC*, 668 F.3d 229, 243 n.63 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013) (citation omitted). Here, FDA must commence future adjudications if it seeks to enforce the Delisting Action. *See* 21 U.S.C. §§ 331-34. Because no "particular dispute" will

4

be resolved under the Delisting Action until "after adjudication of the dispute in a court of competent jurisdiction," it is "classic rulemaking." *City of Arlington*, 668 F.3d at 243.

2.     An adjudication must "bind *parties*," *Safari Club*, 878 F.3d at 333 (emphasis added), rather than work by "more general application" on the public, *Neustar*, 857 F.3d at 896. In fact, the "parties in an adjudicatory proceeding" are "the only entities that could properly be subject to the order in that case." *Wyman-Gordon*, 394 U.S. at 765 (plurality opinion). But, framed as an adjudication, the Delisting Action could bind no one because there were no parties. OpeningBr.21-22.

Defendants do not contend otherwise. Nor do they identify any party-less "adjudication" in the history of agency practice. They instead shift topics by noting that adjudications can "affect the interests of nonparties." FDABr.28; *see* LillyBr.29. But *Wyman-Gordon* made clear that this is proper only if there are parties who can be (and are) bound. 394 U.S. at 765-66 (plurality opinion). An adjudication's impact on non-parties arises from "stare decisis," which deems agency rulings "precedents," but "this is far from saying … that commands, decisions, or policies announced in adjudication are 'rules' in the sense that they must, without more, be obeyed by the affected public."[3] *Id.* at 766. Defendants merely describe the "tangential impact on other entities" of agency adjudications under the principle "that similarly situated non-parties may be affected by the

---

[3] Lilly is therefore wrong to say (with no authority) that adjudications have the same force and effect of law as legislative rules. *See* LillyBr.27-28.

policy or precedent applied, or even merely announced in dicta." *Neustar*, 857 F.3d at 895 (citation omitted). But that impact cannot arise except in a case with "parties" who "could properly be subject to [an] order." *Wyman-Gordon*, 394 U.S. at 765 (plurality opinion). None were present here.

3.      Defendants attempt to substitute novel and unsupported doctrines in place of the APA's core dichotomy. They first draw a new distinction, claiming "a new policy-type rule or standard" is proper to rules and "finding facts" is proper to adjudication. LillyBr.26; FDABr.23-24. The APA draws no such line. Rulemaking can resolve factual questions. In *Safari Club*, it was whether "the killing of [a] trophy animal will enhance the survival of [a] species." 878 F.3d at 322 (quoting regulatory directive). EPA undertakes fact-intensive listing actions by rule, examining whether forms of air pollution "may reasonably be anticipated to endanger public health or welfare," *Massachusetts v. EPA*, 549 U.S. 497, 506 (2007) (quoting statutory directive), whether substances "present, or may present, through inhalation or other routes of exposure, a threat of adverse human health effects," 42 U.S.C. § 7412(b)(2) (requiring list of such substances), and whether specific waste sites involve "risk of harm to the environment from the migration of hazardous substances from the site by way of three routes: groundwater, surface water, and/or air," *Anne Arundel Cnty., Md. v. EPA*, 963 F.2d 412, 414 (D.C. Cir. 1992). IRS similarly takes fact-intensive rulemakings when it lists transactions that have the "potential for [illegal] tax avoidance or evasion." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1141 (6th Cir. 2022) (quoting statute).

Accordingly, Defendants' proposed line cannot "distinguish rules from orders," in contrast to the doctrine "that a rule is a statement that has legal consequences only for the future," which can. *Bowen*, 488 U.S. at 217 (Scalia, J., concurring). Problems agencies confront often involve a mix of factual and legal questions. And no manageable standards enable courts to differentiate those questions involving "a complex policy judgment" from those "which simply entail[] looking at" evidence "in real time." LillyBr.31-32. This case, in fact, has substantial policy implications concerning the availability and affordability of drugs that patients cannot buy and the viability of the industry that would provide them. Notably, Defendants spend a significant part of their briefs attempting unsuccessfully to distinguish Plaintiffs' authorities but cite no case supporting their fact-policy distinction. *See* LillyBr.26-33; FDABr.22 (citing three cases that required notice-and-comment rulemaking).

Plaintiffs also cite no authority suggesting it matters that "[t]he 'prohibition' on mass-produc[ed] compounded drugs comes not from FDA, but from Congress." LillyBr.28; *see* FDABr.23. Agencies often make determinations that trigger preexisting prohibitions or permissions, and those determinations are rules if they are generally applicable on a prospective basis only. *See, e.g.*, *Safari Club*, 878 F.3d at 333 (agency decision triggering preexisting "ban on imports" was a legislative rule).

Defendants separately contend that the Delisting Action must be an adjudication because the new drug approval (NDA) process is. LillyBr.29; FDABr.27-28. But not for reasons relevant here. The NDA process concerns a

license, which the APA defines as the proper subject of adjudication. 5 U.S.C. § 551(6)-(9). Agencies' licensing decisions may permissibly "affect the future rights and authorizations of the parties before them." *Neustar*, 857 F.3d at 896. The Delisting Action, however, is not like a license determination. Indeed, the licensure cases Defendants cite involved specific parties and retrospective focus. *See, e.g.*, *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 536 (D.C. Cir. 2007) (describing "retroactive application to" specific parties).

There is no merit in FDA's attempt to find refuge in its discretion "in deciding which route to pursue." FDABr.21. An agency's discretion is to decide whether to use rulemaking or adjudication as the vehicle to announce a new policy, *NLRB v. Bell Aerospace*, 416 U.S. 267, 294 (1974), *not* discretion to choose one of those paths and call it the other, *see Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627-28 (5th Cir. 2001); *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019) ("courts focus primarily on the actual characteristics of the agency action" (cleaned up)). Because the Delisting Action is a rule, FDA cannot call it something else. *Safari Club*, 878 F.3d at 332.

4.     Defendants next argue that notice-and-comment rulemaking "would make no sense" under Section 506E. LillyBr.29; *see also* FDABr.24-25. But those arguments are not directed to the line between adjudication and rulemaking. Rather, they go to the question whether the FDCA displaces default APA requirements. *See* OpeningBr.24-25. A statute may exempt an agency from notice and comment only if "it does so expressly." 5 U.S.C. § 559. "Congress's intent to make a substantive change [must] be clear." *Ass'n of Data Processing Serv.*

*Orgs. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 686 (D.C. Cir. 1984) (citation omitted). It is therefore not enough that FDA thinks it has "the more natural" reading of Section 506E. FDABr.27.

The FDCA does "not say anything, expressly or otherwise, that modifies the baseline procedure for rulemaking established by the APA." *Mann Constr.*, 27 F.4th at 1146. The statutory requirement that the shortage list be "up-to-date," 21 U.S.C. § 356e(a), can be implemented without difficulty, Defendants' protestations notwithstanding. FDABr.25; LillyBr.29-30. Defendants ignore that the FDCA establishes time frames of "30 calendar days" and "40 calendar days" governing reporting requirements relevant to the shortage listing, 21 U.S.C. § 356c(e) and (f)(2)-(3), indicating that "up-to-date" is measured in time periods compatible with rulemaking. Defendants ignore that agencies regularly conduct expedited rulemaking in even shorter periods and always have the option, when supported by good cause, to forgo notice. OpeningBr.18-19. Defendants also ignore that agencies often consider protected confidential materials in rulemakings. *Id.* at 19-20. In fact, Section 506E's protection of "Trade secrets and confidential information" is framed merely as a recognition of cross-cutting requirements that restrict government employees in all contexts, including rulemakings. *See* 21 U.S.C. § 356e(c)(2) ("Nothing in this section alters or amends section 1905 of Title 18 or section 552(b)(4) of Title 5."). Shortage determinations are not special.

Lilly argues that "it is dispositive" that Congress did not expressly provide for notice-and-comment rulemaking in Section 506E but did elsewhere in the

FDCA. LillyBr.30-31. That argument has been repeatedly rejected in cases holding that an express notice-and-comment requirement is insufficient to displace the APA's default requirement. *See, e.g.*, *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 6 (D.C. Cir. 2011); *Mann Constr.*, 27 F.4th at 1145-46. Lilly responds by contending that cases like these involved statutes that "expressly require the relevant agency to act through rulemaking." LillyBr.30. But Plaintiffs' cited cases enforce the *APA's default* requirement. *See Green Rock v. IRS*, 104 F.4th 220, 226 (11th Cir. 2024) (applying "the notice-and-comment procedures prescribed in the Administrative Procedure Act"); *Mann Constr.*, 27 F.4th at 1142 (same); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1402 (9th Cir. 1995) ("we determine whether FWS violated the APA notice and comment provisions"). Insofar as the relevant statutes separately imposed additional or alternative requirements, that only confirms the error in Lilly's negative-implication argument.

### B. The Delisting Action Must Be Set Aside

Defendants' suggestions that the Court should ratify the Delisting Action even if it was unlawfully promulgated fail for reasons Plaintiffs explained. OpeningBr.27-31.

1. Plaintiffs provided three independent reasons why their challenge to the Delisting Action is not a "lose-lose scenario," as the district court mistakenly thought. ROA.1925; OpeningBr.27-29. FDA simply carries forward the district court's reasoning without mentioning Plaintiffs' arguments. FDABr.10.

Lilly does only slightly more, quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015), for the requirement "that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Id.* at 101; LillyBr.32. But Lilly ignores the clarification in *Perez*'s very next sentence that the analysis looks to what an agency is "*required* to use," not what it *actually* uses. 575 U.S. at 101 (emphasis added). In *Perez*, an agency was not required to use notice-and-comment rulemaking to rescind an interpretative rule even though it had used that process in announcing it. *Id.* Here, *Perez* indicates that, regardless of how FDA initially made its shorting listing, it was required to use notice-and-comment rulemaking for the Delisting Action because it is a legislative rule. OpeningBr.28-29.

Moreover, Lilly has no good response to the twin doctrines that a court may not ratify an agency action on "'*post hoc* rationalizations,'" and that, "[i]n rescinding a prior action, an agency cannot simply brand it illegal and move on." *Louisiana v. DOE*, 90 F.4th 461, 477, 474 (5th Cir. 2024) (citation omitted); *see* OpeningBr. 27-28. Lilly is therefore wrong to contend that this case could adjudicate whether "Lilly's medicines were … validly on the list in the first place." LillyBr.33. No one has challenged that decision, the Court has no jurisdiction to consider that issue, and FDA did not rest the Delisting Action on the basis of any legal deficiency in the original listing action.

2.     Lilly is also unpersuasive in its prejudicial-error argument, LillyBr.34-36, which FDA does not join. The harmless-error doctrine "is to be used only 'when a mistake of the administrative body is one that clearly had no

11

bearing on the procedure used or the substance of decision reached.'" *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5th Cir. 1979) (citation omitted). Here, FDA's error "plainly affected the procedure used." *Id.* FDA satisfied none "of the elements of a notice of proposed rulemaking," such as publication in the Federal Register with a sufficiently specific articulation of the proposed rule. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 683-84 (2020); *United States v. Johnson*, 632 F.3d 912, 931-32 (5th Cir. 2011); *City of Arlington*, 668 F.3d at 244. Lilly—but not FDA—is asking the Court to authorize the government to "skip those procedures, engage in informal consultation, and then be protected from judicial review." *Safari Club*, 878 F.3d at 335 (citation omitted).

████████████████████████████████

████████████████████████████████

████████████ The agency should have published them and requested comment but did not. The agency also did not publish the standards it would apply to evidence submitted by Plaintiffs and other interested persons; had it done so, the *post hoc* objections Defendants have raised could have been addressed in advance. Nor did FDA even declare that it "was soliciting comments from all interested parties." *Safari Club*, 878 F.3d at 335. That is paradigmatic harm that undermines Lilly's effort to excuse the agency (without the agency's joinder) from notice-and-comment rulemaking.

## II. The Delisting Action Is Arbitrary and Without a Reasoned Basis

Plaintiffs demonstrated that FDA failed to "provide sufficient analysis and explanation of the grounds for its decision," including "the analytical and factual bases for the choices made." *Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1426 (D.C. Cir. 1983); *see* OpeningBr.31-46. An agency must justify not only its ultimate conclusion but also its "model assumptions." *Texas v. EPA*, 137 F.4th 353, 369 (5th Cir. 2025). ███████████████████████

██████████████████████████████████████████████████

███████

### A. ██████████████████████████████████████

████████████████████████████████████████

1. ████████████████████████████████████████

██████████████████████████████████████████████████

Excusing this omission, the court proposed that "the FDA properly proceeded through adjudication" and so was not "required to explain [its] rejection of reasonable alternatives." ROA.4669. Plaintiffs' opening brief, however, explained that an agency adjudication "must meet the same standard of reasonableness as notice and comment rulemaking." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) (citation omitted); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("adjudication is subject to the requirement of reasoned decisionmaking as well"); OpeningBr.38-39. Defendants neither dispute this point nor defend this essential plank of the district court's ruling.

Instead, FDA claims that "the governing statute" authorizes the agency to determine "the relevant parameters" and "mechanics" of the analysis "in [its] expert discretion." FDABr.37-38. Even if that is so, the APA still requires "that an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Ins. Co.*, 463 U.S. 29, 48 (1983). For example, the Census Act provides "broad authority" for the Department of Commerce to take a decennial census in "'such form and contents as [it] may determine,'" but that did not stop the Supreme Court from finding that the agency's reasons for including a citizenship question were not "adequately explained" under the APA. *Dep't of Com. v. New York*, 588 U.S. 752, 771, 783 (2019) (quoting 13 U.S.C. § 141). Statutory discretion does "not relieve the government … of its obligation" to "explain why" it adopted the "premise[s] upon which" its order "was assertedly based." *U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1018 (D.C. Cir. 2002).

2.    Unable to identify any justification in the Decision for the underlying parameters, Defendants focus on the *outputs* of those parameters. *See* FDABr.32-36; LillyBr.41, 43-46. But the numbers in the Decision "are only as reputable as the inputs upon which they rely." *Mississippi v. EPA*, 744 F.3d 1334, 1352 (D.C. Cir. 2013). "[T]hey adhere to the inviolable law of data analysis, 'garbage in; garbage out.'" *Id.* The Decision therefore cannot stand on its numbers. The agency had to go a step farther and "explain the assumptions and methodology used in preparing the model" that produced the numbers. *Texas v. EPA*, 137 F.4th at 369 (citation and alteration marks omitted); *Am. Pub. Gas Ass'n*

14

*v. DOE*, 22 F.4th 1018, 1027 (D.C. Cir. 2022) (vacating action because agency did not "justify the assumptions that underlly its analysis"); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 205 (D.C. Cir. 2007) (rejecting decision based on "a model when an important aspect of its methodology was wholly unexplained"); *SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351, 1356-57, 1361 (Fed. Cir. 2020).

This doctrine rejects FDA's proposal that a period of time is self-defining as "the period in which the shortage began and ended." FDABr.37. That view is circular. Based on data analysis, one can produce a shortage finding at will merely by deciding when to start and stop counting supply and demand. That point is especially clear here because it is undisputed that, for multiple alternative time periods, ███████

███████████

███████████

███████████

███████████

███████████

███████████

Defendants do not dispute these figures. ███████

███████████

Lilly admits that at "earlier periods" "all agree that supply constraints existed."[4] LillyBr.52; *see also id.* at 5 (admitting it "experienced greater demand than it could accommodate").

Defendants disregard this in their discussion of numbers. For example,



there is no basis to conclude they "have a 'rational relationship' to the real world." *Texas v. EPA*, 137 F.4th at 369 (citations omitted). ███████████████ ████████████████████████████████████████ ████████████████████

3.     Defendants' limited attempts to justify the Decision's parameters fall short. As an initial matter, Defendants do not deny that ███████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ This alone should be dispositive, and Defendants' justifications come too late. *See State Farm*, 463 U.S. at 50 ("the courts may not accept appellate counsel's *post hoc* rationalizations for agency action"); OpeningBr.36-37.

---

[4] Indeed, it is hard to see how the shortage can be declared over when the ████████████████████████████████████████████████████████

Lilly argues that justifications for the parameters can be discerned from agency silence. LillyBr.39-40. Not so. ████████████████████



████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Meanwhile, Defendants' suggestion that ████████████ must have been disclosed because Plaintiffs challenged it, LillyBr.38; FDABr.38-39, "confuses assuming a premise for the sake of argument with conceding the point." *Mississippi v. EPA*, 744 F.3d at 1361; *see* OpeningBr.36.

More fundamentally, even if ████████████████, FDA never justified that choice. FDA tries to flip the burden to Plaintiffs "to explain why month-by-month accounting is preferable in this context." FDABr.39. But an *agency* must explain why it rejects reasonable alternatives in the first instance. *State Farm*, 463 U.S. at 50. Lilly fares no better in announcing "there were no apparent alternatives." LillyBr.40. Alternatives such as daily, monthly, quarterly, and annual analyses were readily apparent. OpeningBr.37-38. Inventory accounting is neither new nor unique to GLP-1 products. Nor is the phenomenon "that 'surplus [and deficit] carries over.'" LillyBr.40 (quoting

ROA.1936-37). Accountants have long dealt with that problem through principles known to college students. *See* OpeningBr.35 (describing basic principles from college textbook). But FDA—deferring to Lilly—arbitrarily implemented a ███████████████ method that Defendants seem to agree has *never been used for any accounting purpose*. To declare there simply were no alternatives to this contrivance "bespeaks a 'let them eat cake' attitude that ill-becomes an administrative agency." *Chem. Mfrs. Ass'n v. EPA*, 28 F.3d 1259, 1266 (D.C. Cir. 1994).

4.    In all events, the "reality that surplus supply in one month can meet demand in another"—and that deficit in one month encumbers future supply—does nothing to justify the Decision's parameters. LillyBr.39. This is "an important aspect of the problem" that had to be addressed, *State Farm*, 463 U.S. at 43, not an excuse for not addressing it. OpeningBr.37-38.



████████████████████████████████████████████

████████████████████████████████████████████

The Decision does not say how that addresses the ████████████████ Nor does this model appear to reflect reality. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████.[5] Because of these factors, Lilly is wrong to

---

[5] FDA seeks to justify a ████████████████████ on the ground that inventory "can be stored for up to 24 months," FDABr.39, but neither the Decision nor the record say that. FDA relies on Lilly's brief, which the district court erroneously relied on as well. ROA.1132 n.10; *but see State Farm*, 463 U.S.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ While Defendants accuse Plaintiffs of "misunderstandings" and "mischaracterizations," *e.g.*, LillyBr.25; *see also* FDABr.2, they're the ones who persist in equating meaningless ████████████ with ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

Lilly abandons any credibility in its discussion of ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ In the real world, accountants report beginning inventory for a selected period at ████████████████████, not at █████ *See* OpeningBr.35. That aside, an agency must justify *any* important choice, even if it is necessarily "somewhat arbitrary." *Process Gas Consumers Grp. v. FERC*, 177 F.3d 995, 1003 (D.C. Cir. 1999) (citation omitted). ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

at 50 (rejecting *post hoc* justifications). And a storage figure alone does not address the timing or extent of inventory losses, including those attributable to causes other than expiration.

██ Declaring the need for some choice does nothing to justify the choice made. To the contrary, "[t]hat this explanation could be used to justify any ████ at all demonstrates its arbitrariness." *Ass'n of Priv. Colleges & Univs. v. Duncan*, 870 F. Supp. 2d 133, 154 (D.D.C. 2012).

████████████████████████████████████████████████████ but the parameters for these tables are also unjustified. OpeningBr.33-36. As explained already, these showings are not for ██████████ and therefore undermine Defendants' effort to justify that as the relevant time period.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Parameters dictate the outcome—"'garbage in; garbage out.'" *Mississippi v. EPA*, 744 F.3d at 1352.

These same failings undermine Defendants' reliance on ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ FDA

treats this question as self-evidently answered, *see* FDABr.41, but the Decision belies that view. For example, ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

**B.** ████████████████████████████████████████████████

██████████████████████████

Plaintiffs demonstrated that, had FDA selected reasonable parameters, ████████████████████████████████████████████████████████████

██████████████████████

Most importantly, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ The Decision provided no reason to reject them, and Defendants provide none now.

Defendants do attempt to respond to ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ —but they say nothing persuasive. ████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████  Lilly's  principal  response—████████████████

█████████████████████████████████  —is  unbelievable.  ████████

█████████████████████████████████████████████████

████████████████████████████  At a minimum, the agency should have inquired about this discrepancy but did not. FDA excuses itself from doing so because of "[t]he convoluted math required" to see the shortfall. FDABr.44. But the math is grade-school arithmetic, *see* OpeningBr.43, presumably within the capabilities of an "expert" agency, FDABr.38.

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████  Again, at minimum, the agency should have inquired further but failed to do so. In any event, Lilly's entire line of argument on this point has no basis in the Decision.[6]

---

█ ████████████████████████████████████████████████
███████████████████████████

**C.** ███████████████████████████████████████
████████████████████████████

Plaintiffs demonstrated that all record evidence stood against FDA's finding of ██████████████████████████████████ and that FDA made no ████████████████████████████ In this way, aside from failing to justify ████████████ selected for analysis, the agency also failed to make adequately supported findings of █████████████ 21 U.S.C. § 356c(h)(2).

Defendants concede all material premises of Plaintiffs' argument on this point. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████Yet Defendants criticize Plaintiffs for supposedly "misunderstanding logic," LillyBr.46, because Lilly's failure ██████████████████████████
████████████████████████████ But the question here is not what is logically possible but what "substantial evidence" shows. *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022). Only in cinema can one fairly deduce that something will likely happen from the fact that it has never happened. *Cf.* THE MATRIX, Netflix (Warner Bros. Pictures 1999) (Trinity: "[N]obody has ever done this before." Neo: "That's why it's going to work.").

The Decision cited only ███████████████████████████████
██████████████████ Defendants appear to recognize that the agency could not

23

merely take Lilly's "'self-serving views'" "at face value." *Susquehanna Int'l Grp., LLP v. SEC*, 866 F.3d 442, 449-50 (D.C. Cir. 2017) (citation omitted); *see* LillyBr.46-47; FDABr.40-41. But their efforts to drum up support beyond that get nowhere. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

That leaves FDA's hope that Lilly could rise to the occasion of ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ For all anyone can tell from the Decision, consumer demand (or projected demand) *does* exceed ███████████████████

███████ Indeed, Plaintiffs demonstrated, at a minimum, that ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ There is

zero reason to believe—let alone ████████████████████████

███████████████████████████████████████████████████ █

**D.** ███████████████████████████████████████████████

███████████████████████████████████████████

One way past the "'garbage in; garbage out'" problem of "data analysis," *Mississippi v. EPA*, 744 F.3d at 1352, is to look at the real world, such as by asking whether wholesalers, retailers, and patients can obtain a product. Defendants agree that all information of this nature was "countervailing" to the Decision. FDABr.45; *see also* LillyBr.47-56. FDA's view that this evidence "did not undermine or outweigh Lilly's business data," FDABr.46, necessarily falls with its arbitrary treatment of Lilly's data. *See supra* §§ II.A-C.

Indeed, the "myriad limitations" Defendants purport to find in evidence from anyone who was not Lilly, LillyBr.48, plague Lilly's data to a greater degree. █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[7] Lilly claims to discern in the Decision a finding of ████████████████████████████████████████████

Accepting Plaintiffs' briefing in this way—as a substitute for the Decision's failure to make this exact showing—refutes Lilly's many baseless accusations against Plaintiffs, such as for "misunderstandings," "ignorance," and "lack of attention." *Id.* at 25. Lilly fails to cite a single error in Plaintiffs' numerical analysis.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████ FDA applied a double standard.

## CONCLUSION

The Court should reverse the district court's judgment and direct vacatur of the Delisting Action and remand to FDA.

Dated: December 22, 2025

TY DOYLE
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
(713) 646-1374
tgdoyle@bakerlaw.com

Respectfully submitted,

*/s/ Andrew M. Grossman*

ANDREW M. GROSSMAN
RICHARD B. RAILE
KRISTIN A. SHAPIRO
MARC N. WAGNER
BENJAMIN D. JANACEK
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on December 22, 2025, I filed the foregoing with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

Dated: December 22, 2025

*/s/ Andrew M. Grossman*
Andrew M. Grossman
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and 5th Cir. R. 32.3, I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and 5th Cir. R. 32.2 because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,480 words.

Pursuant to Fed. R. App. P. 32(g) and 5th Cir. R. 32.3, I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

Dated: December 22, 2025

*/s/ Andrew M. Grossman*
Andrew M. Grossman
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com